**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RAYMOND L. AND TERRYLL ANN WALLS, | ) | |
| as Co-Trustees of the RAYMOND L. WALLS AND | ) | |
| TERRYLL ANN WALLS DECLARATION OF TRUST | ) | |
| DATED MAY 30, 2002, AS AMENDED JULY 18, 2013, | ) | |
| | ) | |
| *Plaintiffs*, | ) | 16-CV-4048 |
| | ) | |
| v. | ) | Thomas M. Durkin |
| | ) | |
| VRE CHICAGO ELEVEN, LLC, VERDAD REAL | ) | |
| ESTATE, INC., EXP REALTY ADVISORS, INC, | ) | |
| and TARTAN REALTY GROUP, INC., | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

The complaint in this case alleges fraudulent inducement and negligent misrepresentation against four Defendants for conduct during the purchase and sale of commercial property located in Cook County, Illinois. Jurisdiction is based on diversity of citizenship. R.1 ¶¶ 1-6; R. 18; R. 52. On June 6, 2016, two motions to dismiss were filed, one by Defendants VRE Chicago Eleven, LLC ("VRE") and Verdad Real Estate, Inc. ("Verdad"), R. 22, and another by Defendants EXP Realty Advisors, Inc. ("EXP") and Tartan Realty Group, Inc. ("Tartan"), R. 29. For the reasons that follow, both motions are denied.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th

Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## BACKGROUND

Verdad is a large developer of commercial properties, which it leases to single tenants such as fast food restaurants. In 2014, Verdad acquired the property at issue in this case (the "Property") through VRE, its wholly-owned subsidiary. VRE paid $1,885,000 for the Property to the seller, which was an entity owned and/or controlled by Jason LeVecke. At the time of the sale, the Property was leased to a LeVecke entity, Frontier Star, LLC ("Frontier Star"), for operation as a Kentucky

Fried Chicken ("KFC") restaurant, under a lease dated in March 2014. Less than a year later, in February 2015, VRE and Frontier Star terminated the March 2014 lease, and VRE entered into a new lease with another LeVecke entity, MJC Holdings 123, LLC ("MJC"). The February 2015 lease was guaranteed by another LeVecke entity, Frontier Star 1, LLC ("FS1"), as well as by LeVecke personally. The February 2015 lease provided for payment of rent in the amount of $171,000 per year (for the first five years, and higher thereafter), which was substantially higher than the rent payable under the prior lease. Shortly after acquiring the Property, Verdad and VRE proceeded to offer it for sale at a price of 30 percent more than they had paid for it, marketing it to investors largely on the basis that it would generate rental income of $171,000 per year. Verdad and VRE also touted the fact that the February 2015 lease was guaranteed by FS1, and they circulated financial information representing that, as of 2014, FS1 had a net worth of $70 million and annual operating profits of $14.9 million. In addition, EXP and Tartan, acting as the sales and marketing agents for the Property, represented that there had been consideration of converting the KFC to a Hardee's restaurant, but since the Property was doing so well as a KFC, it was decided to continue to operate the Property as a KFC. When Plaintiffs sought financial statements and sales data related to the Property to verify these claims, EXP and Tartan falsely told Plaintiffs that doing so would violate the tenant's franchise agreement.

On March 24, 2015, Plaintiffs and VRE entered into a Purchase and Sale Agreement, pursuant to which Plaintiffs agreed to purchase the Property for

$2,443,000. The sale closed on May 15, 2015. In August, a few months after the closing of the sale, MJC fell behind in its rent payments. On August 29, 2015, LeVecke wrote Plaintiffs that, as a consequence of the financial distress of his various entities, MJC could not pay more than $70,000 annual rent for the Property. In light of MJC's failure to perform its obligations as tenant under the February 2015 lease, Plaintiffs pursued legal action to regain possession of the Property and recover damages. They have now re-leased the Property, but the new tenant pays a substantially lower rent than that which they had expected under the February 2015 lease.

On or about July 27, 2015, Frontier Star filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. On November 17, 2015, FS1 filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Verdad and/or VRE had a close and ongoing business relationship with Frontier Star, FS1, and/or LeVecke as of March 2015, having engaged in more than thirty transactions with one another, such that Verdad and VRE knew of Frontier Star's and its affiliated entities' precarious financial position and potential bankruptcy prior to the date on which VRE and Plaintiffs closed on the sale of the Property. Plaintiffs filed suit against VRE, Verdad, EXP, and Tartan on April 5, 2016. The complaint alleges that Plaintiffs were fraudulently induced into purchasing the Property by various misrepresentations and omissions of Defendants.

# ANALYSIS

## A. CONTRACTUAL DISCLAIMER LANGUAGE

VRE and Verdad argue that Plaintiffs' claims are barred by a "no reliance" clause in the Purchase and Sale Agreement.[1] The provision on which VRE and Verdad rely states in part as follows:

> 10. **CONDITION OF THE PROJECT**
>
> 10.1 <u>As Is Conveyance</u>. EXCEPT FOR THOSE REPRESENTATIONS AND WARRANTIES EXPRESSLY MADE BY SELLER IN THIS CONTRACT OR ANY CLOSING DOCUMENTS, PURCHASER ACKNOWLEDGES THAT IT IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER BY SELLER OR ANY AGENT OR EMPLOYEE THEREOF REGARDING THE PROJECT, INCLUDING, WITHOUT LIMITATION, . . . .

R. 1-3 at 13.

This type of contractual provision is known as a "no reliance" clause. "The purpose of a 'no reliance' clause is 'to head off a suit for fraud' [by] removing the reliance element necessary to state such a claim." *In re Kindra Lake Towing, L.P.*, 2016 WL 3227303, at *2 (N.D. Ill. June 13, 2016) (quoting *Extra Equipamentos E Exportacao Ltda v. Case Corp.*, 541 F.3d 719, 724, 733 (7th Cir. 2008)). Such clauses serve an important function under contract law, which is to "ensure[ ] that both the transaction and any subsequent litigation proceed on the basis of the parties' writings, which are less subject to the vagaries of memory and the risks of fabrication." *Rissman v. Rissman*, 213 F.3d 381, 384 (7th Cir. 2000). The concern if

---

[1] EXP and Tartan do not raise this argument in their motion to dismiss, apparently because they are not parties to the Purchase and Sale Agreement.

no-reliance provisions are not enforced is that contracts "'would not be worth the paper on which they are written.'" *Jacobson v. Hofgard*, 2016 WL 837923, at *9 (D.D.C. Mar. 1, 2016) (applying District of Columbia law) (quoting *One–O–One Enters., Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C. Cir. 1988)) (citations and internal quotation marks omitted). While the Court acknowledges the strong policy reasons favoring enforcement of no-reliance clauses, it nevertheless believes dismissal of Plaintiffs' fraud and negligent misrepresentation claims at the pleading stage on this basis would be inappropriate for a number of reasons.

### 1. AMBIGUITY IN THE NO-RELIANCE CLAUSE

"Exculpatory clauses are not favored and are strictly construed and must have clear, explicit and unequivocal language showing that it was the intent of the parties." *Zimmerman v. Northfield Real Estate, Inc.*, 510 N.E.2d 409, 415 (Ill. App. 1986).[2] "This elevated requirement of precise language helps ensure that parties to a contract—even sophisticated parties represented by able attorneys—understand that . . . the contract may be binding even if it was induced by fraud." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 336 (Tex. 2011) (applying Texas law) (holding that nonreliance clause was not sufficiently clear and specific to preclude fraudulent inducement claim). Cases enforcing such clauses typically deal with express disclaimer language that "*unambiguously covers the fraud that actually occur*[red.]." *MBIA Ins. Corp. v. Royal Indem. Co.,* 426 F.3d 204, 218 (3d Cir. 2005) (applying Delaware law) (emphasis added); *see, e.g.,*

---

[2] Interpretation of the Purchase and Sale Agreement is governed by Illinois law. *See* R. 1-3 at 18 (Purchase and Sale Agreement, ¶ 14.5).

*Rissman*, 213 F.3d at 383 ("Having signed an agreement providing for acceleration as a consequence of sale, Arnold is in no position to contend that he relied on the impossibility of sale."); *Billington v. Ginn-La Pine Island, Ltd.,* 192 So. 3d 77, 84 (Fla. App. 2016) (applying Florida law) ("We emphasize that the disclaimer clauses here are as *clear and conspicuous as they are comprehensive.*") (emphasis added); *Cirillo v. Slomin's Inc.*, 768 N.Y.S.2d 759, 766 (N.Y. Sup. Ct. 2003) ("plaintiff has, in the *plainest language* announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded") (internal quotation marks and citation omitted) (emphasis added). The clause at issue here, however, is ambiguous in a number of respects.

To begin with, Plaintiffs allege fraudulent omissions, not just fraudulent misrepresentations. While Illinois law requires that a plaintiff prove justifiable reliance for a claim of fraudulent concealment, the reliance element for a claim of fraudulent concealment means reliance on the defendant's silence. *See Bauer v. Giannis*, 834 N.E.2d 952, 957 (Ill. App. 2005). The no-reliance contract clause in the Purchase and Sale Agreement covers "representations or warranties" made by the seller, and does not refer to silence or omission by the seller. The Illinois Appellate Court has suggested that a fraudulent concealment claim is not barred by a no-reliance clause if that clause does not expressly encompass omissions. *See Benson v. Stafford*, 941 N.E.2d 386, 410 (Ill. App. 2010) ("the nonreliance clause in the case at bar only applies to a 'warranty, representation, opinion, advice or assertion of fact,' indicating that it encompasses affirmative fraud and not fraudulent concealment,

which concerns silence in the face of a duty to speak"), *cited in McMahan v. Deutsche Bank AG,* 938 F. Supp. 2d 795, 806 n.3 (N.D. Ill. 2013) (declining to decide the issue on a motion to dismiss but noting that the wording of the disclaimer clause "encompasses only affirmative fraud and not fraudulent concealment").

The only reference to an "omission" the Court could find in the documents attached to the complaint is in the sales brochure, which states:

> Neither the Company nor any of their affiliates or representatives makes any representation or warranty, express or implied, as to the accuracy or completeness of the information contained herein or any other written or oral communication transmitted or made available to any recipient. The Company and their respective affiliates and representatives expressly disclaim any and all liability based, in whole or in part, on such information, errors therein *or omissions* there from.

R. 1-1 at 2 (emphasis added). There is no indication in the complaint, however, that Plaintiffs signed the sales brochure or otherwise agreed to be bound by it. Moreover, the reference to omissions in the sales brochure is in what appears to be a disclaimer-of-liability clause (as opposed to a no-reliance clause). *See id.* ("The Company and their respective affiliates and representatives expressly disclaim any and all liability . . ."). A disclaimer of liability clause might not be enforceable under Illinois law. *See Benson,* 941 N.E.2d at 409 (distinguishing between clauses that target reliance and clauses that release a party from liability for intentional torts, noting that the former are enforceable while the latter "would be void"); *see also Eisenberg v. Goldstein,* 195 N.E.2d 184, 186 (Ill. 1963) ("[o]ne who by misrepresentation has induced another to act to his prejudice cannot relieve himself of liability by a mere disclaimer thereof in advance").

Second, the Purchase and Sales Agreement is ambiguous as to whether the no-reliance clause was intended to apply to the subject matter of Plaintiffs' claims in this case. *See Giger v. Ahmann,* 2013 WL 6730108, at *8 (N.D. Ill. Dec. 20, 2013) ("misrepresentations regarding facts that are outside the terms of the written contract are not covered by a contract's 'no-reliance' clause"). Plaintiffs argue that the subjects underlying their claims—principally, the financial condition of the lease guarantor and whether the Property could be expected to generate rent payments of a certain sum on a sustained basis—are not issues addressed in the Purchase and Sale Agreement. The no-reliance clause is limited to "representations or warranties . . . *regarding the Project*." R. 1-3 at 13 (emphasis added). As Plaintiffs point out, "the Project" is defined in the Agreement as the "real and personal property" enumerated therein, including "the Seller's right, title and interest in and to" the tenant lease on the real property (1.5). R. 1-3 at 1, 2. While Plaintiffs' claims relate to the tenant lease, it could be said that they do not relate to the Seller's "right, title and interest in and to" the tenant lease. VRE and Verdad respond that the words "right, title and interest in and to" are irrelevant to the coverage issue. The Project, they argue, includes the lease, and therefore the no-reliance clause applies broadly to any representations and warranties "regarding" the lease, period. The Court, however, will not ignore language in the contract in order to construe the nonreliance clause in favor of enforcement when there are serious allegations of intentional fraud. Plaintiffs argue, based on the contract language "Seller's right, title and interest in and to," that the no-reliance clause encompasses only

representations and warranties related to the Seller's legal right to collect rents, as opposed to representations and warranties about the economic value of those rents to the owner of that legal right. That is at least a plausible interpretation of the Purchase and Sale Agreement.

Another ambiguity about the coverage of the no-reliance clause arises from the surrounding contractual language. It is a well established rule of construction that words must be construed in context, which means including the surrounding words. *See Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) ("[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others. The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself.") (citations omitted)**.** The no-reliance clause appears in a section of the Purchase and Sale Agreement (10.1) that is labeled "As Is Conveyance." As a matter of contract construction, the first part of § 10.1 (the "no-reliance" language) must be interpreted in context, which means taking into account the "as is" language that follows. Here is the complete text of the provision in question, with the "as is" language in bold:

**10.  CONDITION OF THE PROJECT**

**10.1  <u>As Is Conveyance</u>.** EXCEPT FOR THOSE REPRESENTATIONS AND WARRANTIES EXPRESSLY MADE BY SELLER IN THIS CONTRACT OR ANY CLOSING DOCUMENTS, PURCHASER ACKNOWLEDGES THAT IT IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER BY SELLER OR ANY AGENT OR EMPLOYEE THEREOF REGARDING THE PROJECT,

INCLUDING, WITHOUT LIMITATION, ITS PHYSICAL CONDITION, ITS SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS COMPLIANCE WITH LAWS, INCLUDING, WITHOUT LIMITATION, ENVIRONMENTAL LAWS, OR THE PRESENCE OR ABSENCE OF CHEMICALS, TOXIC OR HAZARDOUS SUBSTANCES, MATERIALS OR WASTES THEREUPON, AND SELLER EXPRESSLY DISCLAIMS ANY AND ALL SUCH REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, EXCEPT FOR ANY LIMITED WARRANTIES CONTAINED HEREIN AND THE SPECIAL WARRANTY OF TITLE TO BE CONTAINED IN THE DEED TO BE DELIVERED AT THE CLOSING. **PURCHASER SHALL ACCEPT THE PROJECT IN ITS 'AS IS", "WHERE IS", "WITH ALL FAULTS" CONDITION, AND SELLER HEREBY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXPRESS OR IMPLIED.** AFTER CLOSING, SELLER SHALL BE UNDER NO OBLIGATION WHATSOEVER TO UNDERTAKE ANY REPAIR, ALTERATION, REMEDIATION OR OTHER WORK OF ANY KIND WITH RESPECT TO ANY PORTION OF THE PROJECT.

R. 1-3 at 13-14.

Viewed in light of the surrounding language, the no-reliance clause in the first sentence of § 10.1 arguably relates only to representations or warranties pertinent to the "as is" portion of § 10.1. Those representations and warranties appear to be limited to defects in the physical condition of or title to the real property. The heading or title of the section ("CONDITION OF THE PROJECT . . . As Is Conveyance") seems to confirm this interpretation. VRE and Verdad counter that the Agreement contains a provision (14.8) stating that "section titles or captions . . . are for convenience only and shall not be deemed to be part of this Contract." R. 40 at 3. But interpreting the no-reliance clause as being limited by the

"as is" language does not depend merely on the heading or title itself. A factfinder reasonably could conclude that the language of § 10.1 even beyond the title, when read in its entirety and taken in context, suggests that the provision has to do with the physical condition of or title to the real property.

Finally, the no-reliance clause contains an exception to its application: it states that the purchaser acknowledges it is not relying on any representations or warranties "*EXCEPT* FOR THOSE REPRESENTATIONS AND WARRANTIES EXPRESSLY MADE BY SELLER IN THIS CONTRACT OR ANY CLOSING DOCUMENTS." R. 1-3 at 13 (emphasis added). VRE and Verdad replace the last part of this sentence with the words "EXCEPT FOR THOSE REPRESENTATIONS AND WARRANTIES SET FORTH IN SECTION 8.2 OF THIS CONTRACT," R. 23 at 7, likely because none of the representations or warranties contained in § 8.2 have any relevance to Plaintiffs' claims in this case. But the actual language of the agreement preserves all representations and warranties made by the seller "in this contract or any closing document," not just those "set forth in section 8.2." It is possible, therefore, that a representation or warranty made in a provision of the Purchase and Sale Agreement other than in § 8.2, or one made in a closing document, might apply here. *See Zimmerman,* 510 N.E.2d at 415 ("[T]he exculpatory language in question does not include 'such representations [which] are in writing.' Thus, the representations regarding lot size which were made in the multiple listing sheet and in the sales contract are not included under the exculpatory clause."). Exhibit 2.3 to the Agreement (R. 1-3 at 22) lists the due

diligence materials provided by the seller to Plaintiffs, and includes a copy of the tenant lease. Plaintiffs' claims in this case relate to the rent amount shown on the tenant lease, which allegedly was artificially inflated for purposes of fraudulently inducing Plaintiffs to purchase the Property. The Court cannot determine at this stage whether Plaintiffs have a fraud claim based on that document, but, if they do, then the no-reliance clause might not apply because the lease appears to be included in the closing documents.

In sum, the meaning and applicability of the no-reliance clause is ambiguous, making the issue currently before the Court inappropriate for resolution on a motion to dismiss. The Court declines to interpret the no-reliance clause as a matter of law based solely on the language cited by VRE and Verdad read in isolation from any other language in the agreement and without consideration of the parties' contractual intent and surrounding circumstances.[3]

---

[3] VRE and Verdad also cite to other paragraphs in § 10.1 of the Purchase and Sale Agreement in support of their view as to the proper meaning and construction of the no-reliance clause. For instance, they cite to the third paragraph in § 10.1, which provides that:

> Purchaser acknowledges that it is a sophisticated real estate investor who shall have had, as of the closing date, open access to, and sufficient time to review, all information, documents, agreements, [*etc.*] . . .

R. 1-3 at 14 (§ 10.1). Nothing in this provision, however, excuses VRE and Verdad from liability for fraud. They also cite to the first part of the fourth paragraph in § 10.1, which states that:

> Purchaser shall undertake such investigation as shall be required to make Purchaser fully aware of the condition of the Project, including . . . all facts, circumstances and information which may affect the use and operation of the Project . . . .

## 2.    ENFORCEABILITY OF The NO-RELIANCE CLAUSE

Even if the no-reliance clause was unambiguous, the Court still would have to address the issue of its enforceability. The parties dispute whether the no-reliance clause is enforceable as a matter of law. Plaintiffs argue that the clause is an unenforceable "as is" clause because it appears under the heading "<u>As Is Conveyance</u>." *See* R. 37 at 14-15. Plaintiffs cite two cases which do support their argument that "as is" clauses are unenforceable under Illinois law. *See Napcor Corp. v. JP Morgan Chase Bank, N.A.,* 938 N.E.2d 1181, 1187 (Ill. App. 2010) ("'as is' language in a real estate sale contract does not shield a seller from liability for fraud") (internal quotation marks omitted); *Bauer*, 834 N.E.2d at 957-908 (same).

VRE and Verdad contend that the contracts at issue in *Napcor Corp.* and *Bauer* have different language than the Purchase and Sale Agreement, and they present a comparison chart to prove their argument. R. 40 at 4. But the chart is somewhat misleading. In the first place, VRE and Verdad omit the "as is" language from the Purchase and Sale Agreement, which is similar to the "as is" language in the two Illinois cases. In addition, VRE and Verdad omit language from the Purchase and Sale Agreement regarding representations and warranties that is similar to the language they quote from the contracts in *Bauer* and *Napcor Corp. Compare* R. 1-3 at 14 (§ 10.1) ("seller makes no representation or warranty as to the truth, accuracy or completeness of any materials, data or other information

*Id.* This language by itself does not relieve VRE and Verdad from the consequences of their own fraud because a party who fraudulently induces another to act cannot "impute negligence to the other merely because of the latter's reliance on the misrepresentation." *Eisenberg*, 195 N.E.2d at 186.

delivered by seller to purchaser in connection with the transaction contemplated hereby"); *with Napcor Corp.* 938 N.E.2d at 1185 ("[plaintiff] agrees and admits that no representations or statements have at any time been made by [defendant]"), *and Bauer*, 834 N.E.2d at 956 (purchaser accepts the property "without any warranty or representation on the part of the Seller").

Instead of comparing the "no representations" language in the Purchase and Sale Agreement to the "no representations" language in the contracts at issue in *Bauer* and *Napcor Corp.*, VRE and Verdad compare the no-reliance clause in the Purchase and Sale Agreement to the "no representations" language in the latter two cases. In effect, they are attempting to distinguish *Bauer* and *Napcor Corp.* because the "as is" clauses at issue in those cases did not specifically use the word "rely" or "reliance." On the one hand, an unpublished decision by the Illinois Appellate Court did in fact distinguish *Bauer* on this basis. *See Martom Partners v. U.S. Bank, N.A.*, 2015 IL App. (1st) 142398-U, at *4 (Ill. App. Sept. 23, 2015) (unpublished opinion). On the other hand, this Court recently held that a contract clause that does not specifically use the word "rely" or "reliance" can still function as a no-reliance clause. *In re Kindra Lake Towing, L.P.,* 2016 WL 3227303, at *2. The similarity between the "no representations" language in the Purchase and Sale Agreement to the "no representations" language in the contracts at issue in *Bauer* and *Napcor Corp.,* therefore, may be more relevant than the absence of the word "rely" or "reliance" in the contracts at issue in the two Illinois cases.

An examination of the *Bauer* opinion supports this view, because the result in that case did not appear to turn on the absence of the word "rely" in the contract. In fact, the defendant in *Bauer* argued that an "as is" clause, even without the word "rely," is the equivalent of a "disclaimer of reliance" clause. *Bauer*, 834 N.E.2d at 958. The Illinois Appellate Court did not disagree with that characterization, and, instead, discussed Illinois cases where the contracts at issue included the word "rely." But the court distinguished that precedent *not* because the contracts at issue included no-reliance language but because the fraud claims at issue were based on *oral* representations outside the parties' written agreements. According to the *Bauer* court, enforcing the disclaimer clauses in those cases made sense because "[p]lacing primacy on the written word is a primary function of [the] law and reduces the possibility of faulty memories and fabrication." *Id*. at 960 (internal quotation marks and citation omitted) (citing *Rissman*, 213 F.3d at 384 (nonreliance clause ensures that both the transaction and any subsequent litigation proceed on the basis of the parties' writings, which are less subject to the vagaries of memory and the risks of fabrication")). The court said that the case before it was different, however, because the alleged fraud occurred in written disclosures made by the defendant prior to the sales transaction.

A number of Illinois cases that have enforced exculpatory clauses since the *Bauer* decision also rely to a large degree on the fact that the plaintiff in those cases was attempting to use oral misrepresentations to overcome a written contract disclaimer. *See, e.g., Greer v. Advanced Equities, Inc.,* 964 N.E.2d 772, 778 (Ill. App.

2012) (limiting its holding "to a situation in which a purchaser of securities pursues a common-law fraud claim based on alleged oral misrepresentations and there exists an applicable written instrument that contains a nonreliance clause disclaiming reliance on oral misrepresentations," and "express[ing] no opinion on any other scenario"); *Schrager v. Bailey,* 973 N.E.2d 932, 938 (Ill. App. 2012) (distinguishing another Illinois case in which, "unlike the present case, the alleged oral misrepresentation was set forth in [a] [written] settlement agreement"). Similarly, the stated rationale for the Seventh Circuit's decisions in *Rissman,* 213 F.3d at 385, and *Extra Equipamentos E Exportacao Ltda,* 541 F.3d at 724, turns on a policy of favoring written contract clauses over uncertain and easily fabricated pre-contractual oral representations. It is unclear whether Plaintiffs base their claims in this case in any part on alleged oral misrepresentations; but the complaint does make clear that at least some of the alleged misrepresentations are in the written offering and sales brochure.

In addition, the Court must consider all of the surrounding circumstances in deciding whether the no-reliance clause is enforceable. *See, e.g., In re Kindra Lake Towing, L.P.,* 2016 WL 3227303, at *3 (holding that justifiable reliance is normally a question of fact). VRE and Verdad argue that the case law cited by Plaintiffs on this point is outdated, and that courts now regularly dismiss cases on the pleadings on the basis of no-reliance clauses without any factual inquiry into the surrounding circumstances. R. 40 at 6. But the Court disagrees. The case law in this circuit, including two previously cited decisions by this Court, *In re Kindra Lake Towing,*

*L.P.* and *Giger,* support the continued viability of Judge Rovner's concurring view in *Rissman* that "all of the surrounding circumstances [should be considered] in determining whether reliance on a prior [representation] is reasonable, and [ ] the existence of a non-reliance clause is but one factor, albeit a fairly convincing one in many cases." 213 F.3d at 388; *see also Extra Equipamentos E Exportacao Ltda*, 541 F.3d at 725 ("[S]ome courts . . . . require, before such a clause can be enforced, an inquiry into the circumstances of its negotiation. . . . Whether Illinois would permit or require such an inquiry we do not know, but will assume an affirmative answer.").[4]

Circumstances that might be considered in determining the enforceability of the no-reliance clause here include (1) the previously discussed lack of clarity regarding the meaning of the provision; (2) the fact that Plaintiffs' claims are at least partly based on alleged written misrepresentations; (3) Plaintiffs' allegations that Defendants thwarted their due diligence investigation by falsely stating that

---

[4] *See, e.g., Typenex Co-Inv., LLC v. Solar Wind Energy Tower, Inc.*, 123 F. Supp. 3d 1017, 1028 (N.D. Ill. 2015) ("it is not clear that the law always gives effect to a no-reliance clause, at least without further factual inquiry that cannot be undertaken at this stage of the litigation"); *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 909-10 (N.D. Ill. 2006) (rejecting argument that Seventh Circuit case law holds that fraud claims based on pre-contractual statements are automatically barred where the contract contains a non-reliance provision); *Hartmarx Corp. v. JBA Int'l, Inc.*, 2002 WL 406973, at * 5 (N.D. Ill. Mar. 15, 2002) ("the Seventh Circuit did not intend to reject outright all fraud claims involving sophisticated parties and a non-reliance provision"). This is the approach of many states other than Illinois as well. *See, e.g., In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 905 F. Supp. 2d 814, 823 (S.D. Ohio 2012), *aff'd sub nom. Pharos Capital Partners, L.P. v. Deloitte & Touche*, 535 Fed. App'x 522 (6th Cir. 2013); *Barr v. Dyke,* 49 A.3d 1280, 1286-90 (Me. 2012); *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 337.

certain requested information could not be provided to Plaintiffs due to a nondisclosure provision in the requested documents;[5] and (4) Plaintiffs' allegations that Defendants were involved in an orchestrated plan to deceive them and other potential investors into believing the Property was a good investment when they knew it was not.[6] In short, the Court concludes that whether Plaintiffs' reliance on the representations at issue in this case was reasonable remains a question of fact notwithstanding the contract no-reliance clause. That question should be resolved on a complete record after the parties have had an opportunity for discovery.

---

[5] Because of this allegation, the Court cannot give definitive weight to a second "no-reliance" clause, to which VRE and Verdad also cite, appearing in the second half of the fourth paragraph in § 10.1:

> Purchaser covenants and warrants to Seller that Purchaser shall rely, except to the extent of Seller's representations and warranties contained hereunder, or in any closing documents, solely on Purchaser's own due diligence investigation in determining to purchase the Project.

R. 1-3 at 14 (§ 10.1). This no-reliance clause seems more directly applicable to Plaintiffs' claims than the first no-reliance clause on which VRE and Verdad primarily rely. Nonetheless, it is tied to Plaintiffs' due diligence efforts, and, because Plaintiffs claim those efforts were hindered by Defendants' misrepresentations concerning the availability of certain information, its enforceability remains to be seen.

[6] *See, e.g., Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1062 n.78, 1064 (Del. Ch. 2006) ("To the extent that the Stock Purchase Agreement purports to limit the Seller's exposure for its own conscious participation in the communication of lies to the Buyer, it is invalid under the public policy of this State.") (citing, among other things, Richard A. Posner, ECONOMIC ANALYSIS OF LAW § 4.6 (5th ed. 1998) (discussing how "[t]he lie is different. The liar makes a positive investment in manufacturing and disseminating misinformation. This investment is completely wasted from a social standpoint . . .")); *see also Cousin Subs Sys. Inc. v. Better Subs Dev. Inc.,* 2011 WL 4585541, at * 8 (E.D. Wis. Sept. 30, 2011) ("Ingenious wrongdoers cannot immunize their wrongdoing from the law with a single clause.").

## B.     RULE 9(B)

Both sets of Defendants argue that the complaint should be dismissed for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) has been dealt with extensively in the law of this circuit. The Court therefore will rely on the following well-stated summary of that law:

> While the federal rules generally provide for liberal notice pleading, Rule 9(b) requires that plaintiffs averring fraud state with particularity the circumstances constituting fraud. Specifically, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story, of the circumstances constituting fraud. Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in the federal courts, whether or not the applicable state or federal law requires a higher standard of proving fraud. This heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do. Thus, [a] plaintiff claiming fraud or mistake must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate.
>
> While the circumstances constituting fraud must be pleaded with particularity, a defendant's [m]alice, intent, knowledge [or] other condition of mind . . . may be averred generally. In the Seventh Circuit, a plaintiff who provides a general outline of the fraud scheme sufficient to reasonably notify the defendants of their purported role in the fraud satisfies Rule 9(b). [F]air notice is [p]erhaps the most basic consideration underlying Rule 9(b). Further, when details of the fraud itself are within the defendant's exclusive knowledge, specificity requirements are less stringent. Under those circumstances, the complaint must plead the grounds for the plaintiff's suspicions of fraud.

*Goldberg v. Rush Univ. Med. Ctr.,* 929 F. Supp. 2d 807, 814-15 (N.D. Ill. 2013)

(internal quotation marks and citations omitted).

VRE and Verdad argue that the complaint does not comply with Rule 9(b) because it does not allege the specific individual(s) who made the representations. VRE and Verdad do not cite any case law that holds that a complaint must be dismissed unless it identifies the specific corporate employee responsible for each alleged misrepresentation. *See Davis v. Carter,* 452 F.3d 686, 691-92 (7th Cir. 2006) (perfunctory and undeveloped arguments that are not supported by pertinent authority are waived."). In any event, the complaint alleges that the false statements in question were made in a brochure and offering circular that were disseminated by EXP and Tartan, who were agents of VRE and Verdad. The brochure and offering circular are attached to the complaint, and recite the names of the specific individuals who were involved in the sale. In addition, the complaint identifies by name the specific employee of EXP, who, as agent of VRE and Verdad, allegedly lied about the identity of the present tenant of the Property, R.1, ¶ 26, as well as the specific employee of VRE who represented by email to Plaintiffs or their agent that Verdad had received rent each month for the past year from the current tenant without disclosing that the lease amounts were less than under the current lease, *id.* ¶¶ 29, 38a.

VRE and Verdad also assert that the complaint fails to sufficiently state when and where the alleged misrepresentations were made. But they acknowledge that the complaint specifies that the false statements were made in the sales brochure and offering materials. Moreover, the complaint clearly identifies EXP and Tartan, agents of VRE and Verdad, as being the parties who provided the brochure

and offering materials to Plaintiffs. R. 1, ¶ 21. Additional details which VRE and Verdad complain are omitted, such as when the materials were provided to Plaintiffs, can fairly be inferred from the allegations (they were provided by EXP and/or Tartan prior to Plaintiffs entering into the sale transaction). Information such as who drafted the brochure and offering materials is likely to be in the exclusive possession of Defendants, although one can infer that Plaintiffs believe Defendants are jointly responsible for their preparation and dissemination. Finally, the Court does not agree with VRE and Verdad that the method by which the alleged false representations were communicated is not alleged. Even assuming that the "method of communication" must be specifically alleged (a proposition for which VRE and Verdad provide no authority), the "method of communication" for the majority of the false statements is alleged to be (1) statements made in the written sales brochure and offering; (2) a communication with Plaintiffs' agent on or about March 19, 2015 (¶ 26); and (3) an email from an employee of Verdad on or about April 21, 2105 (¶ 29).

The Court finds the Rule 9(b) arguments of Defendants EXP and Tartan to be equally unpersuasive. To begin with, their reference to the "group pleading doctrine" which the Seventh Circuit has "rejected" is inapposite. The term "group pleading doctrine" refers to "a judicial presumption that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations." *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710

(7th Cir. 2008) (internal quotation marks and citation omitted). In the first place, EXP and Tartan do not raise any issue regarding whether they can be held liable for statements made by an employee. Therefore, the group pleading doctrine, and, it follows, the Seventh Circuit's rejection of it, are not relevant here. In any event, the Seventh Circuit's rejection of the group-pleading doctrine is based on the fact that it "is inconsistent with the 'strong inference' requirement" applicable in securities fraud suits. *Id.* The "strong inference" requirement is a special pleading rule for securities class actions imposed by the Private Securities Litigation Reform Act of 1995 ("PSLR"). *See* 4 LAW SEC. REG. § 12:102 (2016); *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008) ("The PSLRA provides that the complaint in a securities fraud action must 'with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'") (citation omitted). This is not a securities fraud case, and therefore the "strong inference" requirement is not implicated.

The more general "group pleadings" rule pertains to allegations of fraud where the complaint does not explain the role of different defendants. But the standard for such pleadings is whether they "provide fair notice to each individual Defendant concerning the nature of his or her alleged participation in the fraud." *Rocha v. Rocha*, 826 F.3d 905, 911 (7th Cir. 2016). The Court finds that the complaint is more than adequate in this regard. For instance, the complaint alleges that EXP served as Verdad's and/or VRE's broker in their sale of the real property at issue, and that Tartan served as the Illinois broker of record for EXP, VRE,

and/or Verdad. R. 1, ¶¶ 4, 5. The complaint further alleges that EXP and Tartan marketed the property on behalf of VRE and/or Verdad through a brochure and offering circular that contained false and misleading information and representations. *Id.,* ¶ 21. The specific nature of the allegedly false and misleading statements in the brochure and offering circular is spelled out in three lengthy paragraphs in the complaint. *Id.,* ¶¶ 21, a, b, and c. The complaint alleges additional allegedly false representations and omissions by EXP and Tartan in other paragraphs. *Id.,* ¶¶ 22, 23, 26, 29, 38. Many of these paragraphs identify not just the corporate entity but specific individuals by name.

In support of their argument that the complaint improperly lumps together all four Defendants., EXP and Tartan cite two paragraphs of the complaint appearing under the heading of "Count I" and "Count II." *See* R. 30 at 4 (quoting ¶¶ 41 and 49 of the complaint). But EXP and Tartan fail to acknowledge that other paragraphs found in the section of the complaint entitled "Facts Common To All Counts" provide greater specificity of the general allegations contained in the paragraphs cited by EXP and Tartan. The Court already has discussed some of those specific allegations, which are more than adequate to provide EXP and Tartan with notice of the allegedly fraudulent conduct for which they are being sued, independent of the allegedly fraudulent conduct of VRE and Verdad. EXP and Tartan are put on notice of their specific role in the alleged fraudulent scheme by these specific allegations. There is nothing wrong with setting forth the specific role in the fraudulent scheme allegedly played by VRE and Verdad in the background

section of the complaint and then referring collectively to Defendants in the conclusory paragraphs under the specific counts which incorporate those earlier paragraphs. In fact, this method of pleading results in a well organized and readable complaint.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss, R. 22, 29, are denied.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: September 29, 2016