# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAYMOND L. and TERRYLL ANN WALLS, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | No. 16-cv-4048 |
| ) | |
| VRE CHICAGO ELEVEN, LLC, et al., ) | |
| ) | Judge Thomas M. Durkin |
| *Defendants.* ) | |
| ) | |
| VERDAD REAL ESTATE, INC., et al., ) | |
| ) | |
| *Third-Party Plaintiffs* ) | |
| ) | |
| v. ) | |
| ) | |
| MARK A. REINSCH, et al., ) | |
| ) | |
| *Third-Party Defendants.* ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs brought this suit against various defendants alleging fraudulent inducement and negligent misrepresentation during their purchase of a commercial property located in Illinois. Several of the defendants filed motions to dismiss the Second Amended Complaint. The Court issued a lengthy opinion on those motions on September 25, 2018. *See* R. 190; *Walls v. VRE Chicago Eleven, LLC*, 344 F. Supp. 3d 932 (N.D. Ill. 2018). Familiarity with that opinion for the background and factual detail of this case is assumed here. Following that opinion, Plaintiffs filed a Third Amended Complaint ("TAC"). R. 207. Before the Court now is Defendants VPC Chicago11, LLC, Vestapoint Capital II LLC, and Aaron Stearns' (collectively,

"Vestapoint") motion to dismiss Count X of the TAC under Fed. R. Civ. P 12(b)(6). R. 218. For the following reasons, Vestapoint's motion is granted.

## BACKGROUND

As a reminder, Vestapoint is a partial owner of VRE. R. 207 ¶ 157. In the TAC, Plaintiffs allege that Vestapoint invested over $5M in the Chicago Eleven Properties deal in March 2014 "with the expectation of receiving a high rate of return, with repayment expected over a short period of time." *Id.* ¶ 159. Between October 2014 and February 2015, Vestapoint, through Defendant Stearns, communicated with representatives of Verdad regarding the Chicago Eleven Properties, the conversions from KFCs to Hardees, and the lease modifications. *Id.* ¶¶ 160-170. By mid-November 2014, Keen (the President of Verdad) set a weekly conference call with Stearns to provide updates "every week until we determine the solution." *Id.* ¶ 162. And eventually, Keen and Stearns met in person to "discuss everything in greater detail." *Id.* ¶ 165.

As the alleged scheme progressed, Stearns expressed concern about Jason LeVecke and the transaction. *Id.* ¶¶ 167, 170. For example, at one point Stearns stated, "[LeVecke] is taking liberties with our trust and my money (and your guarantee), and the longer that we remain without any form of documentation, the more likely it is that the latter scenario is accurate." *Id.* ¶ 170. Stearns' questioning led Verdad to state that it would use a different capital source for subsequent deals, *see id.* ¶ 169, and later Keen wrote "No more levecke deals for [Stearns], unless Joe and I agree ahead of time. We need to limit his exposure to LeVecke." *See* R. 207-28.

2

Finally, in February 2015, as Verdad began marketing the properties to purchasers, Stearns was "surprised" to learn of the marketing efforts because he thought the parties would agree to revised leases before offering the properties for sale. R. 207 ¶¶ 173, 174.

Through these facts, Plaintiffs allege Vestapoint "actively encouraged and supported the plan and agreement; and they were a chief beneficiary of the plan and agreement in that a large portion of the net proceeds VRE derived from the [sales] . . . , were paid to [Vestapoint] as a return on its investment." *Id.* ¶ 157. Plaintiffs assert that although Vestapoint was not aware of the fraudulent marketing of the properties until February 2015, because Vestapoint "did not insist that the properties be pulled from the market until the leases could be amended to reflect the true economics," they are liable for civil conspiracy along with the rest of the defendants in Count X of the TAC. *See* R. 226 at 4.

## ANALYSIS

To bring a claim for civil conspiracy, Plaintiffs must allege: (1) an agreement between two or more persons for accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing Illinois law). Because Plaintiffs' conspiracy allegations sound in fraud, Plaintiffs must also plead their allegations with particularity. *Id.* at 507. ("Although claims of . . . civil conspiracy are not by definition fraudulent torts, Rule 9(b) applies to 'averments

3

of fraud,' not claims of fraud."). Under Rule 9(b), "a party who alleges fraud or mistake 'must state with particularity the circumstances constituting fraud or mistake.'" *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Thus, a plaintiff must plead the "who, what, when, where, and how" of the alleged fraud. *Id.*

Plaintiffs still fail to allege any agreement by Vestapoint in the conspiracy. Although Plaintiffs have added significant details of Vestapoint's knowledge of the transaction generally, Plaintiffs do not allege Vestapoint had any knowledge of the fraudulent scheme to sell the properties at inflated values to third-party buyers. Instead, Plaintiffs explicitly acknowledge that Vestapoint did not even know the properties were being marketed until February 25, 2015. R. 207 ¶ 173 ("On February 25, 2015, Stearns received an e-mail reflecting that at least four of the Chicago 11 properties were being marketed as KFCs, at prices reflecting that the rent on the properties was still $171,000 per store, per year. This surprised Stearns, as 'he thought we were working on perfecting a revised lease.'").

From the TAC's allegations, it is not clear that Vestapoint even knew about the fraudulent scheme beyond its knowledge that the properties were being marketed. Plaintiffs also fail to allege agreement or intentionality by Vestapoint to further the conspiracy. Taking all inferences in favor of Plaintiffs, Plaintiffs at most allege Vestapoint was negligent for failing to stop the remaining defendants from carrying out their fraud after Vestapoint discovered the properties were being marketed at the higher rental rates. But that is not sufficient to state a claim. *Miller*,

4

969 N.E.2d at 925 ("[C]ivil conspiracy is an intentional tort. . . . 'Accidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy.'") (citations omitted); *Borsellino*, 477 F.3d at 509 (defendant's mere participation in the creation of a company, without more, was not sufficient to satisfy Rule 9(b)'s particularity requirements in a case alleging defendants defrauded plaintiff when they unlawfully created the company); *Damato v. Merrill Lynch, Pierce, Fenner & Smith*, 878 F. Supp. 1156, 1162 (N.D. Ill. 1995) (applying Illinois law and finding allegations that defendants failed to ensure the alleged co-conspirators were properly registered with a regulatory commission insufficient to state a claim for conspiracy to defraud).

Turning to Plaintiffs' arguments in support of their claims, Plaintiffs argue that whether Vestapoint committed an intentional act itself does not matter for purposes of civil conspiracy. R. 226 at 8. While Vestapoint need not commit the fraudulent act, Vestapoint must still join the conspiracy *intentionally*—not merely as a negligent investor. And, as the Court already discussed in detail in its prior opinion, R. 190 at 34-35, Plaintiffs' conclusory allegations that Vestapoint "actively encouraged and supported the plan and agreement," R. 207 ¶ 157, because it was an investor in the scheme also fail. Those allegations are not supported by facts that Vestapoint had any actual knowledge of the fraudulent agreement, and the Court cannot infer agreement to the scheme simply because Vestapoint rightfully asked for updates on its $5M investment.

In sum, Plaintiffs still fail to point to anything suggesting Vestapoint agreed to the conspiracy. Accordingly, Plaintiffs cannot maintain their conspiracy claim against Vestapoint. *See Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F. 3d 930, 938-39 (7th Cir. 2012) (affirming dismissal of a conspiracy claim where complaint fails to allege an explicit or implicit agreement by the defendant to the alleged wrongful scheme); R. 190 at 35-36. Count X against Vestapoint is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants VPC Chicago11, LLC, Vestapoint Capital II LLC, and Aaron Stearns's motion to dismiss, R. 218, is granted.

ENTERED:

*Thomas M Durkin*
_____

Dated: January 25, 2019

Honorable Thomas M. Durkin
United States District Judge