# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAYMOND L. and TERRYLL ANN WALLS, ) ) *Plaintiffs*, ) ) v. ) ) VRE CHICAGO ELEVEN, LLC, et al., ) ) *Defendants.* ) ) VERDAD REAL ESTATE, INC., et al., ) ) *Third-Party Plaintiffs* ) ) v. ) ) MARK A. REINSCH, et al., ) ) *Third-Party Defendants.* ) | No. 16-cv-4048 Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs brought this suit against various defendants alleging fraudulent inducement and negligent misrepresentation related to their purchase of a commercial property in Chicago. On September 25, 2018, the Court dismissed the Plaintiffs' claim for civil conspiracy against Defendants VPC Chicago 11, LLC, VestaPoint Capital II LLC, and Aaron Stearns (collectively "VestaPoint") for failure to state a claim. *See* R. 190. Plaintiffs subsequently filed an amended complaint and VestaPoint again moved to dismiss under Rule 12(b)(6). The Court granted VestaPoint's motion on January 25, 2019 and dismissed the VestaPoint Defendants from the case with prejudice. *See* R. 232. On September 5, 2019, Plaintiffs filed a

motion for reconsideration of the dismissal order based on newly discovered evidence. Plaintiffs' motion is denied.

## Background

The Court assumes the parties' familiarity with its prior orders, which provide a detailed factual background of the case. *See* R. 190; R. 232. Briefly explained, and as relevant here, Verdad Real Estate acquired a group of eleven properties leased for use as Kentucky Fried Chicken restaurants (the "Chicago Eleven Properties") from an entity owned by Jason LeVecke. Verdad and LeVecke agreed to a sale/leaseback deal in which Verdad purchased the properties, then leased them back to the LeVecke entity for $171,000 in annual rent, double what the KFC restaurants had previously paid. The deal also contemplated converting the Chicago Eleven Properties to Hardee's restaurants. $400,000 per store was built into the purchase price so that LeVecke could renovate and convert each property, and the increased rent amount represented payment of those costs. The parties later abandoned their conversion plans, and Verdad and LeVecke entered new leases in February 2015 removing the conversion requirement but maintaining the higher rent. Meanwhile, Verdad and LeVecke entered a side agreement that allowed LeVecke to keep the $400,000 for each property if Verdad could obtain high enough sale prices. If Verdad could not sell the properties for what it wanted, LeVecke would have to repay the money or make the property improvements. The parties concealed the side agreement from prospective buyers and Plaintiffs later purchased one of the Chicago Eleven Properties.

VestaPoint invested over $5 million in the initial Chicago Eleven Properties deal and, through Defendant Stearns, communicated with Verdad on a weekly basis about the properties throughout 2014 and 2015. Plaintiffs allege that VestaPoint engaged in the conspiracy to defraud prospective buyers. In its Order dated September 25, 2018, the Court dismissed Count X for civil conspiracy against VestaPoint without prejudice for failure to state a claim. *See* R. 190 at 33-36. The Plaintiffs subsequently filed a Third Amended Complaint, and the VestaPoint defendants again moved to dismiss Count X. On January 25, 2019, the Court granted the motion and dismissed Count X against VestaPoint with prejudice, concluding that:

> Plaintiffs still fail to allege any agreement by Vestapoint in the conspiracy. Although Plaintiffs have added significant details of Vestapoint's knowledge of the transaction generally, Plaintiffs do not allege Vestapoint had any knowledge of the fraudulent scheme to sell the properties at inflated values to third-party buyers. . . . From the TAC's allegations, it is not clear that Vestapoint even knew about the fraudulent scheme beyond its knowledge that the properties were being marketed. Plaintiffs also fail to allege agreement or intentionality by Vestapoint to further the conspiracy. Taking all inferences in favor of Plaintiffs, Plaintiffs at most allege Vestapoint was negligent for failing to stop the remaining defendants from carrying out their fraud after Vestapoint discovered the properties were being marketed at the higher rental rates. But that is not sufficient to state a claim.

R. 232 at 4. Plaintiffs now move for reconsideration of the January 25, 2019 dismissal order based on newly discovered evidence regarding VestaPoint's involvement. The Plaintiffs also seek leave to file a Fourth Amended Complaint to include additional allegations against VestaPoint, and for leave to file certain exhibits under seal.

3

## Legal Standard

Federal Rule of Civil Procedure 54(b) governs motions to reconsider interlocutory orders. The Rule provides that "any order that does not resolve all claims as to all parties 'may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015) (quoting Fed. R. Civ. P. 54(b)); *see also Dobbey v. Carter*, 2017 WL 2573210, at *4 (N.D. Ill. June 14, 2017) (quoting Rule 54(b) and explaining that when multiple defendants are involved in a case, an order dismissing one defendant may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities). "The standard courts apply in reconsidering their decisions is generally the same under both Rule 59(e) and Rule 54(b)." *Morningware, Inc. v. Hearthware Home Prods., Inc.*, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011).

Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Patrick*, 103 F. Supp. 3d at 911 (quoting *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006)). "Such problems rarely arise and the motion to reconsider should be equally rare." *Beezley v. Fenix Parts, Inc.*, 2019 WL 666754, at *1 (N.D. Ill. Feb. 13, 2019) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)); *see also F.D.I.C. v. Mahajan*, 2013 WL 3771419, at *2 (N.D. Ill. July 16, 2013) ("Motions to reconsider should be granted only in rare circumstances."). For motions to reconsider based on newly discovered evidence, the

moving party must show not only that the evidence was unavailable during the pendency of the underlying motion, but also that it could not with reasonable diligence have discovered or produced it. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

**Analysis**

Plaintiffs base their motion on the following pieces of "newly discovered evidence:" 1) An email chain between Stearns, VestaPoint's Counsel, and the president of Verdad, Jason Keen, that includes an email from Stearns discussing the side agreement to amend the lease; 2) An email from Stearns to Keen discussing the impact of LeVecke's bankruptcy filing on their ability to sell one of the Chicago Eleven Properties; 3) Defendant Chris Baker's deposition testimony stating that Aaron Stearns directed him to put the amended lease terms into a side agreement rather than incorporating the terms into the lease; and 4) Defendant Justin Huston's deposition testimony about a July 29, 2015 conference call between a Verdad representative, Baker Monroe, Stearns, and Stearn's counsel during which they discussed whether the sale of a Chicago Eleven Property (different than the one at issue in this case) should be postponed due to Frontier Star's bankruptcy (an entity owned by LeVecke). The Court discusses each in turn.

1) Email chain discussing the side agreement to amend the lease

The two emails at issue were produced in May 2019 by the Baker Monroe Defendants. The lynchpin of Plaintiffs' motion is the email dated February 22, 2015 from Aaron Stearns to VestaPoint's counsel. In relevant part, Stearns discusses the

strategy of amending the existing lease and entering into the side agreement. He further writes that this arrangement would allow Verdad to sell the properties with a clean lease. Plaintiffs contend that this email unequivocally demonstrates that VestaPoint participated in the scheme to defraud potential buyers.

The problem with Plaintiffs raising this now – more than seven months after VestaPoint was dismissed with prejudice – is that they've had this email in their possession since April 17, 2017 when it was previously produced by Verdad, more than three months before VestaPoint was a defendant in the case, a year and five months before the first dismissal order, and a year and nine months before the second dismissal order. The law is clear that a "party may not use a motion for reconsideration to introduce evidence that could have been presented earlier." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000); *see also Drnek v. City of Chicago*, 205 F. Supp. 2d 894, 895-96 (N.D. Ill. 2002) (motions for reconsideration "cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the [underlying] motion.") (alteration in original) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)).[1]

Plaintiffs attempt to sidestep this hurdle by arguing that the email chain produced in 2017 lacked an additional email that was not produced until 2019 by

---

[1] Even in *Lucas v. District of Columbia*, 214 F. Supp. 3d 1 (D.D.C. 2016), the case on which Plaintiffs rely to argue that their motion should be decided under an "as justice requires" standard, the court notes that motions for reconsideration may be granted when based on "the discovery of evidence *not previously available*." *Id.* at 5 (emphasis added).

Baker Monroe. But the missing email is a forward from Keens to Baker and says only, "Have not read this yet….jsut [sic] forwarding.." R. 266-1 at 1. It does not provide any additional information about Stearns' alleged participation in the fraud, and Plaintiffs base their motion on the part of the email chain that they possessed in 2017. Accordingly, the email is not newly discovered evidence for purposes of a motion for reconsideration.

2) Email discussing LeVecke's bankruptcy filing

Plaintiffs contend that the email from Stearns to Keen discussing the impact of LeVecke's bankruptcy filing on their ability to sell a different one of the Chicago Eleven Properties serves as an independent basis for granting their motion. In that email, Stearns acknowledges that the bankruptcy may have a negative impact on the disposition of the property and writes that it "is easier to work through challenges with a trusted partner. We will work through this together." R. 266-2 at 2.

As an initial matter, Plaintiffs do not explain why they "could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion]." *Caisse*, 90 F.3d at 1269 (alteration in original). VestaPoint responded to Plaintiffs' third-party subpoenas in May 2017 and specifically stated that they were only producing documents from February 1, 2014 through June 1, 2015. Plaintiffs did not object to the scope of that production and cannot now complain that they didn't receive the email dated August 20, 2015. *See HCP of Illinois, Inc. v. Farbman Grp. I, Inc.*, 991 F. Supp. 2d 999, 1000 (N.D. Ill. 2013) ("a motion for

7

reconsideration does not allow a party to revisit strategic decisions that prove to be improvident").

More importantly, even if Plaintiffs had acted diligently, the email would not change the outcome of VestaPoint's dismissal. The email, which discusses how the bankruptcy would impact future sales of the Chicago Eleven Properties, was sent three months after the property at issue in this case had already been sold. Plaintiffs contend that's of no matter because it still shows an overarching scheme to market the properties to unsuspecting buyers. But nothing in the email implicates VestaPoint in the fraud. Rather, consistent with the Court's prior dismissal order, it merely reflects Stearns' understandable concern about the status of his investment. Stating the unremarkable conclusion that it is easier to solve challenges with a trusted partner is not enough to demonstrate VestaPoint's role in the conspiracy.

3) Chris Baker's and Justin Huston's deposition testimony

That brings us to the deposition testimony. Huston testified that a LeVecke entity filed for bankruptcy the day before the sale of a Chicago Eleven Property was set to close (not the one purchased by plaintiffs). Huston further stated that Verdad, Baker Monroe, and Stearns had a conversation concerning whether the bankruptcy affected the sale and if it should be postponed, at which point the parties collectively agreed to move forward. Plaintiffs do not explain why having a conversation about how LeVecke's bankruptcy affected the sale indicates VestaPoint's participation in a fraudulent scheme to sell Plaintiffs a different property at an inflated value. Merely stating that this demonstrates a larger scheme to unload properties to unaware

8

buyers is not enough. Tellingly, the section of Plaintiffs' brief explaining why the new evidence cures the previous deficiencies identified in the Court's dismissal order does not once mention Huston's testimony. *See* R. 266 at 9-11.

Nor does Baker's testimony that Stearns directed him to put the amended lease terms into a side agreement constitute newly discovered evidence. That testimony offers no new information apart from what the Stearns email reveals, which the plaintiffs have had since 2017. Indeed, plaintiffs seem to acknowledge as much in their proposed Fourth Amended Complaint, stating that "Baker *confirmed* that, *as suggested by the exchange above* [referring to the Stearns email chain], he prepared the secret side letter at Stearns' direction." R. 265-1 ¶ 175 (emphasis added). Facts that were available to Plaintiffs before the Court's dismissal order are not newly discovered merely because they are later presented again in the form of deposition testimony. *See Johnke v. Espinal-Quiroz*, 2018 WL 3361888, at *6 (N.D. Ill. July 9, 2018) (denying motion for reconsideration and concluding that deposition testimony was not newly discovered evidence because it referenced facts that existed before the court decided the underlying motion and thus could have been obtained earlier); *Wilson ex rel. Adams v. Cahokia School Dist. No. 187*, 470 F. Supp. 2d 897, 913-14 (S.D. Ill. 2007) (denying motion for reconsideration based on deposition testimony where plaintiffs did not explain why the facts testified to were not known to them before the underlying order was entered).

In sum, none of Plaintiffs' "newly discovered evidence" offers a proper basis for granting their motion. Plaintiffs had two chances "to point to anything suggesting

9

that Vestapoint agreed to the conspiracy" and was not merely a negligent investor. R. 190 at 35. The Stearns email possibly may have accomplished that. But Plaintiffs have had that evidence since 2017 and sat on their opportunity to present it through two dismissal orders and nearly two-and-a-half years of litigation before filing their motion for reconsideration in September 2019. And they may never have presented it had Baker Monroe not produced it a second time. Litigants and the judicial system have a mutual interest in the finality of decisions, which is why dismissal with prejudice – as in this case – should not be taken lightly. It is also why parties may not rely on evidence that was available during the pendency of the underlying motion on a motion for reconsideration and why it "is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless." *Frietsch v. Refco Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) (refusing to consider argument that a party did not raise until after the court had dismissed the suit). That rings especially true in this case, which has now been pending for nearly four years. Plaintiffs have not met their burden of showing why they could not have produced the evidence at issue sooner with reasonable diligence, or why this should be one of the "rare circumstances" in which their motion for reconsideration should be granted. *Mahajan*, 2013 WL 3771419, at *2 (citing *Bank of Waunakee*, 906 F.2d at 1191).[2]

---

[2] VestaPoint also argues that the Stearns email discussing the side agreement and the communication about which Baker and Huston testified is protected by attorney-client privilege. For the reasons already stated, because Plaintiffs have not met their

10

**Conclusion**

Plaintiffs' motion for reconsideration and related relief [265] is denied. The Court also denies Plaintiffs' motion to file a Fourth Amendment Complaint to include additional factual allegations supporting Count X against VestaPoint and to file certain exhibits of the Fourth Amendment Complaint under seal.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: February 24, 2020

---

burden on the motion for reconsideration, the Court need not consider VestaPoint's argument here.